# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN CURRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-cv-1237 |
| ) | |
| WEXFORD HEALTH SOURCES, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MERIT REVIEW ORDER

Plaintiff, proceeding *pro se* and incarcerated at Pontiac Correctional Center, files a complaint pursuant to 42 U.S.C. § 1983 alleging an Eighth Amendment claim for deliberate indifference to his serious medical needs. (Doc. 1). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ALLEGATIONS

Plaintiff alleges that Defendants Wexford Health Sources, Henry Tilden (medical director), Nikki Rambo (healthcare administrator), Cheryl Hansen (nurse practitioner), and Stephen Ritz (Wexford's utilization manager) were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

Plaintiff states that he received open heart surgery before he was incarcerated. On August 10, 2013, Plaintiff was sent to Menard Correctional Center, where he allegedly experienced breathing difficulties, extreme chest pain, and weakness. Plaintiff put in for sick call and was examined by a nurse, who allegedly confirmed that his heart was abnormal and recommended that he see a doctor. Plaintiff was later examined by a doctor, who submitted a request to refer Plaintiff to an outside hospital for further testing. Plaintiff alleges that Defendant Ritz, Wexford's utilization manager, denied the request.

Plaintiff claims that he continued to experience chest pain, breathing complications, and weakness throughout his body for almost a year, even though Defendants Ritz and Wexford were fully aware of his condition.

Plaintiff put in for sick call again and was seen by the same doctor. Plaintiff alleges that the doctor submitted another request for Plaintiff to be sent to an outside hospital for further testing.

It appears that Defendant Ritz approved the second request because Plaintiff was examined by a cardiologist, who allegedly recommended surgery to correct a hole in Plaintiff's heart. Plaintiff alleges that he visited the cardiologist a few more times, but he did not receive heart surgery at that time.

Plaintiff was transferred to Pontiac on April 4, 2018, and continued to experience breathing compilations. Plaintiff put in for sick call and was seen by Defendant Tilden, who allegedly informed Plaintiff that he would submit a request to refer Plaintiff to an outside hospital for testing. In addition, Defendant Tilden prescribed Ultram for pain relief and a low bunk/low gallery medical permit.

On an unspecified date, Plaintiff went to an outside hospital where doctors allegedly confirmed that the hole in his heart needed to be closed and that one of his lungs was collapsing.

Plaintiff alleges that the doctors recommended that he should be placed in a cell with open bars on a low gallery and receive a pillow, showers, and pain medication.

When he returned to Pontiac, Plaintiff was taken to the healthcare unit and examined by Defendant Hansen, a nurse practitioner, who allegedly told Plaintiff that she was putting him on "crush medication." Plaintiff alleges that crushing the medication did not relieve his pain. When he complained about his medication being crushed, Defendant Hansen allegedly said, "I am tired of you whining pussy's [sic] believing that we're suppose [sic] to cater to you inmates." (Doc. 1 at 5-6).

He also alleges that he was placed on a high gallery at Pontiac, despite having a medical permit for a low gallery. Plaintiff put in for sick call and was seen by Defendant Tilden. Plaintiff informed Defendant Tilden that prison officials had placed him on a high gallery and Defendant Hansen was crushing his medication. Defendant Tilden allegedly told Plaintiff that he would ensure prison officials complied with his medical permits; however, Plaintiff claims that no corrective actions were taken.

When Plaintiff needed his pain medication renewed, Plaintiff informed Defendant Hansen that prison officials were not complying with his medical permits. Defendant Hansen allegedly told Plaintiff that she is not "Santa Claus" and "I hope you die snitch!" *Id*. at 7.

Plaintiff alleges that his medical condition worsened, and he began to cough up blood. When Plaintiff informed Defendant Hansen, she allegedly told him to stop whining and that he would be fine.

Plaintiff alleges that Defendant Rambo, the healthcare administrator at Pontiac, knew about the issues related to his medical condition, medical permits, and medication. Defendant Rambo allegedly told Plaintiff there was nothing she could do because it was above her pay grade.

Plaintiff had heart surgery to close the hole in his heart on July 10, 2020; however, he alleges that he still experiences pain, has trouble breathing, and might need a pacemaker.

On an unspecified date, Plaintiff alleges that Defendant Tilden was "locked out of the prison" and that Pontiac was without a medical doctor for several months.

At some point, Plaintiff returned to the hospital, where medical doctors ordered that he remain on a low gallery/open air cell. Plaintiff claims that Defendant Hansen refused to renew the medical permits and said, "she's not babying inmates." He also alleges that Defendant Hansen discontinued Plaintiff's pain medication even though he is still in pain.

Finally, Plaintiff claims that Pontiac has an inadequate healthcare system with no full-time doctor and only one full-time nurse practitioner to care for several hundred inmates, who allegedly are not receiving medical treatment. Plaintiff states that Wexford was deliberately indifferent to his serious medical needs by maintaining a policy and practice that violated his constitutional rights.

**ANALYSIS**

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). A claim does not rise to the level of an Eighth Amendment issue, however, unless the punishment is "deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir. 1996).

**Defendant Wexford**

Plaintiff alleges that Defendant Wexford is liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), for maintaining a policy and practice that violated his constitutional rights. Private corporations such as Wexford have potential liability under *Monell* if they perform a governmental function and, in doing so, injure the plaintiff through an unconstitutional policy or practice. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying municipal liability to private corporations performing governmental functions). "Liability may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policy making authority." *Taylor v. Wexford Health Sources, Inc.*, No.15-5190, 2016 WL 3227310, at *4 (N.D. Ill. June 13, 2016) (citing *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000)).

In the instances where *Monell* claims may proceed with conclusory allegations of a policy or practice, some supporting facts must be pled to allow a reasonable inference that the alleged policy or practice exists sufficient to put the defendant on notice of the alleged wrongdoing. *Taylor*, 2016 WL 3227310, at *4; *see also McCauley v. City of Chicago*, 671 F.3d 611, 617-18 (7th Cir. 2011).

Here, Plaintiff does not identify an express policy or the particulars of an express policy. As a result, the Court views Plaintiff's complaint as asserting that Wexford allowed a custom of unconstitutional conduct by its employees. "To establish 'custom' for § 1983 purposes, the plaintiff must show 'a widespread practice that, although not authorized by written or express policy, is so permanent and well settled as to constitute a custom.'" *Dolis v. Loftus*, No. 08- 2085,

5

2011 WL 978916, at *13 (C.D. Ill. Mar. 17, 2011) (quoting *Montano v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008)). To successfully plead liability based on custom, a plaintiff must allege that the corporate policymakers were "aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

Plaintiff fails to allege that Wexford was aware of the risks and failed to take the appropriate steps to protect him. Plaintiff also offers no information to show that this so-called policy, practice, or custom exists, apart from the record of his own treatment. *See Gaston v. Ghosh*, No. 11-6612, 2017 WL 5891042, at *14 (N.D. Ill. Nov. 28, 2017) (finding that three instances, standing alone, do not amount to a policy, custom, or practice under the *Monell* standard); *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014) (isolated incidents did not establish a pattern of behavior that would support an inference of a custom or policy). Therefore, Wexford is DISMISSED, without prejudice, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. Plaintiff will be given leave to amend.

**Defendant Tilden**

Plaintiff alleges that Defendant Tilden, the medical director at Pontiac, was deliberately indifferent to his serious medical needs by not ensuring that prison officials complied with his medical permits. Plaintiff alleges that he told Defendant Tilden that he was being housed on a high gallery, despite his medical permit for a low gallery. He also alleges that he informed Defendant Tilden that Defendant Hansen, the nurse practitioner, was crushing his pain medication. Defendant Tilden allegedly told Plaintiff that he would make sure prison officials complied with his medical permits.

Based on Plaintiff's complaint, it is unclear if Defendant Tilden knew that these issues had not been remedied, especially because Plaintiff's subsequent examinations were with Defendant Hansen; Defendant Tilden was "locked out" of Pontiac on an unknown date; and Pontiac was without a full-time medical doctor for several months. The Court finds that Plaintiff's allegations are insufficient to establish an Eighth Amendment deliberate indifferent claim against Defendant Tilden. *See Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008) (defendant must have a "sufficiently culpable state of mind," that he actually knew of a substantial risk of serious harm and consciously disregarded it). Therefore, Defendant Tilden is DISMISSED, without prejudice, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. Plaintiff will be given leave to amend.

**Defendant Rambo**

Plaintiff alleges that Defendant Rambo, the health care administrator at Pontiac, was deliberately indifferent to his serious medical needs. A healthcare administrator who is not aware of a specific patient's need for care is not generally liable under § 1983. *See e.g., Miller v. Larson*, 756 Fed. App'x 606, 610 (7th Cir. 2018) (finding that claim against defendant who oversaw the medical staff was properly dismissed because she was not responsible for individualized patient care and did not know about the danger plaintiff faced from medical staff). A medical director sued under § 1983 cannot be held liable absent personal involvement. *Smith v. Rohana*, 433 Fed. App'x 466, 469 (7th Cir. 2011); *Minix v. Canarecci*, 597 F.3d 824, 834 (7th Cir. 2010) (supervisor must know about and personally be involved in unconstitutional treatment to be held liable for inadequate care; mere supervisory status does not make a defendant responsible).

Here, Plaintiff alleges that Defendant Rambo knew about his heart condition and that prison officials were not complying with his medical permits. He also alleges that she knew he

7

needed his medication renewed and about the issues he was having with Defendant Hansen. When Plaintiff spoke with Defendant Rambo about these problems, she allegedly told him that this was above her pay grade; there was nothing she could do; and she was not getting involved. The Court finds that Plaintiff has made sufficient allegations of Defendant Rambo's personal knowledge to proceed past the initial review on his claim of deliberate indifference to a serious medical condition.

**Defendant Hansen**

Plaintiff alleges that Defendant Hansen was deliberately indifferent to his serious medical needs by "crushing" his pain medication even though she knew it was ineffective for treating Plaintiff's pain; by failing to ensure that prison officials complied with his medical permits; by refusing to renew Plaintiff's medical permits following his surgery, even though doctors at the hospital allegedly recommended that he be given a low gallery/open air cell; and by discontinuing Plaintiff's pain medication even though he is still in pain. Based on Plaintiff's allegations, the Court finds that Plaintiff has sufficiently stated a deliberate indifference claim against Defendant Hansen.

**Defendant Ritz**

Plaintiff alleges that he was examined by a doctor at Menard Correctional Center who submitted a request to refer Plaintiff to an outside hospital for further testing. Plaintiff alleges that Defendant Ritz was deliberately indifferent by denying the request. Plaintiff claims that he continued to experience chest pain, breathing complications, and weakness throughout his body for almost a year and that Defendant Ritz was allegedly aware of his condition.

Healthcare providers may exercise their medical judgment when deciding whether to refer a prisoner to a specialist. *Pyles v. Fahim*, 771 F.3d 403, 411-12 (7th Cir. 2014). The failure to refer

8

is deliberately indifferent only if "blatantly inappropriate." *Id.* Denying a referral in favor of "easier and less efficacious treatment" may be blatantly inappropriate if it does not reflect sound professional judgment. *Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016), *as amended* (Aug. 25, 2016).

Here, Plaintiff fails to allege how Defendant Ritz was fully aware that Plaintiff continued to experience adverse symptoms for nearly a year. *See Lee*, 533 F.3d at 509. Moreover, when a second request for a referral to an outside hospital was submitted to Defendant Ritz, it appears that he approved the request because Plaintiff was then seen by a cardiologist. The Court finds that Plaintiff has failed to state claim of deliberate indifference against Defendant Ritz. Therefore, he is DISMISSED, without prejudice, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. Plaintiff will be given leave to amend.

**IT IS THEREFORE ORDERED:**

1.      This case shall proceed on the deliberate indifference claim as stated above against Defendants Rambo and Hansen. All other claims are dismissed and will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of Court pursuant to Federal Rule of Civil Procedure 15.

2.      Defendants Wexford, Tilden, and Ritz are DISMISSED, without prejudice, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. Plaintiff shall have 30 days from the entry of this Order to file an amended complaint. It is to be captioned "Amended Complaint" and is to include all of Plaintiff's claims against all Defendants, without reference to a prior pleading. Plaintiff's Amended Complaint will replace his Complaint in its entirety. Piecemeal amendments are not accepted.

3.      Plaintiff's Motion for Status of Case [16] is MOOT.

4. This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

5. The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

6. Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

7. If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for

effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8. This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

9. Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the deposition.

10. Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

11. Plaintiff shall be provided a copy of all pertinent medical records upon request.

12. Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to defense counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

13. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

ENTERED:   10/17/2022

s/ Michael M. Mihm  
Michael M. Mihm  
U.S. District Court Judge