UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN CURRY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 22-cv-1237 |
| ) | |
| WEXFORD HEALTH SOURCES, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MERIT REVIEW ORDER – SECOND AMENDED COMPLAINT

Plaintiff, proceeding *pro se* and incarcerated at Pontiac Correctional Center ("Pontiac"), files a Second Amended Complaint pursuant to 42 U.S.C. § 1983 alleging an Eighth Amendment claim for deliberate indifference to a serious medical need. (Doc. 39). This case is now before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Second Amended Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### ALLEGATIONS

Plaintiff alleges that Defendants Wexford Health Sources, Inc. ("Wexford"), Henry Tilden (medical director at Pontiac), Nikki Rambo (healthcare administrator at Pontiac), Cheryl Hansen

1

(nurse practitioner at Pontiac), and Stephen Ritz (Wexford's utilization manager) were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

Plaintiff states that he received open heart surgery before being incarcerated. On August 10, 2013, Plaintiff was sent to Menard Correctional Center ("Menard"), where he allegedly experienced breathing difficulties, chest pain, and weakness. Plaintiff put in for sick call and was examined by a nurse, who allegedly confirmed that his heart was abnormal and recommended that he see a doctor.

Plaintiff was later examined by a doctor, who allegedly stated that his heart condition needed to be treated while it was still in the early stages. Plaintiff alleges that the doctor submitted a request to refer Plaintiff to an outside hospital.

Plaintiff states that Defendant Wexford requires collegial review of a medical director's recommendation to refer an inmate to an outside hospital for treatment. Plaintiff alleges that Defendant Ritz, Wexford's utilization manager, denied the request for a referral even though he allegedly knew Plaintiff had a serious heart condition and needed treatment. Plaintiff claims that Defendant Ritz's denial of the request delayed treatment and resulted in further pain and suffering.

On an unknown date, Plaintiff put in for sick call again because of breathing complications. He was examined by a doctor, who allegedly told Plaintiff that Defendant Ritz denied the referral request and that Wexford is "to[o] cheap to pay for inmates' healthcare." (Doc. 39 at 3).

Plaintiff states that he endured pain for over a year until he was sent to an outside hospital and examined by a cardiologist, who recommended surgery to repair a hole in his heart that was causing his breathing difficulties.

On April 4, 2018, Plaintiff was transferred to Pontiac where he continued to experience breathing complications. Plaintiff was examined by Defendant Tilden, who allegedly informed

2

Plaintiff that he would refer him to an outside hospital for treatment. Defendant Tilden prescribed Ultram for pain relief and issued a low bunk/low gallery medical permit.

A few months later, Plaintiff was sent to the University of Illinois Hospital in Chicago ("UIC") and examined by Dr. Elliot, a cardiologist, who allegedly confirmed that the hole in Plaintiff's heart needed to be closed or one of his lungs would likely collapse. Plaintiff alleges that the doctors at UIC recommended that he be placed in a cell with open air bars on a low gallery and receive a pillow, showers, and pain medication. Plaintiff states that he informed Defendants Tilden, Rambo, and Hansen on several occasions that his medical permits were not in compliance with the UIC doctors' recommendations.

When he returned to Pontiac, Plaintiff was taken to the healthcare unit and examined by Defendant Hansen, a nurse practitioner, who allegedly told Plaintiff that she was putting him on "crush medication." *Id.* at 4. Plaintiff alleges that he informed Defendant Hansen that crushing the medication did not relieve his pain. She allegedly told Plaintiff, "I am tired of you whining pussy's [sic] believing that we're suppose [sic] to cater to you inmates." *Id*.

On an unknown date, Plaintiff put in for sick call and was seen by Defendant Tilden. Plaintiff informed Defendant Tilden that his medical permits for low bunk/low gallery, pillows, showers, ice, and a cell with open air bars were not in compliance. Despite having a low gallery permit, prison officials had placed him on a high gallery, and climbing the stairs affected his breathing. Plaintiff also informed Defendant Tilden that Defendant Hansen was crushing his pain medication. Defendant Tilden allegedly told Plaintiff that he would ensure prison officials complied with his medical permits; however, Plaintiff claims that no corrective actions were taken. Defendant Tilden allegedly told Plaintiff that "prison is not a hotel." *Id.* at 5.

When Plaintiff needed his pain medication renewed, Plaintiff again informed Defendant Hansen that prison officials were not complying with his medical permits. Defendant Hansen allegedly told Plaintiff that she is not "Santa Claus" and "I hope you die snitch!" *Id*.

A few weeks later, Plaintiff alleges that he began coughing up blood. When Plaintiff informed Defendant Hansen, she allegedly told him to stop whining and that he would be fine.

Plaintiff alleges that he informed Defendant Rambo, the healthcare administrator at Pontiac, about his medical condition and the issues related to his medical permits and medication. Defendant Rambo allegedly told Plaintiff there was nothing she could do because it was above her pay grade and she was not getting involved.

Plaintiff had heart surgery at UIC on July 10, 2020. He alleges that the cardiologists are currently considering whether he needs a pacemaker. The cardiologists allegedly recommended that his pain medication and medical permits should be renewed and that he should be placed in a cell with open air bars on a low gallery for his breathing conditions.

Plaintiff alleges that on October 31, 2022, medical doctors recommended that he should continue taking Ultram, have medical showers, and receive snack bags due to weight loss. Plaintiff claims that Defendants Hansen and Tilden failed to renew the permits and medication.

Plaintiff alleges that Wexford is a private corporation that has a contract with the Illinois Department of Corrections ("IDOC") to provide healthcare services to inmates within Illinois prisons. He claims that Wexford breached this contract by denying and delaying proper medical treatment for his heart condition, including heart surgery to close the hole in his heart. As a result of Wexford's breach, Plaintiff claims that he endured unnecessary pain and suffering.

Plaintiff alleges that Defendant Wexford determines what medical treatment to provide to Plaintiff and to all inmates within Illinois prisons. Plaintiff states that cardiologists and

gastroscopists have recommended a certain course of medical treatment for his heart and stomach conditions, including continuing the prescription for Ultram. Plaintiff claims that he has been deprived of his medications due to Wexford's cost saving policy. He claims that Wexford's failure to provide timely and adequate medical care constitutes an "unconstitutional policy, practice, and custom followed by its employees as set forth in [his] medical history as well as thousands of lawsuits filed against Wexford by other [IDOC] inmates for similar complaints." *Id.* at 8.

## ANALYSIS

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). A claim does not rise to the level of an Eighth Amendment issue, however, unless the punishment is "deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir. 1996).

**Defendant Ritz**

Plaintiff alleges that he has a serious heart condition and had heart surgery before he was incarcerated. Plaintiff was sent to Menard on August 10, 2013, where he was examined by a doctor who submitted a request to refer Plaintiff to an outside hospital for treatment due to breathing difficulties. Plaintiff alleges that Defendant Ritz, Wexford's utilization manager, denied the request for a referral even though he knew Plaintiff had a serious heart condition and needed treatment. Although it is unclear from the face of Plaintiff's Second Amended Complaint when

Defendant Ritz denied Plaintiff's request for a referral, Plaintiff alleges that he was eventually seen by an outside cardiologist while he was incarcerated at Menard. Plaintiff alleges that he was at Menard from August 10, 2013, until April 4, 2018, when he was transferred to Pontiac. Plaintiff does not allege that Defendant Ritz denied any subsequent referral requests while he was incarcerated at Pontiac.

Congress did not specify a statute of limitations for civil rights claims under Section 1983. *Ray v. Maher*, 662 F.3d 770, 772 (7th Cir. 2011). In determining the statute of limitations for Section 1983 claims, federal courts have adopted the forum state's statute of limitations for personal injury claims. *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998). In Illinois, the statute of limitations for personal injury claims is two years. 735 ILCS 5/13-202. Thus, a Section 1983 claim in a United States District Court in Illinois must be filed within two years of the accrual of the claim.

"[A] prisoner's claim of deliberate indifference to his serious medical need accrues upon his receipt of treatment for his condition, or his departure from the place where he has continuously been refused treatment." *McClary v. Huston*, 2012 WL 5354709, at *2 (C.D. Ill. Oct. 29, 2012) (citing *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001)). The statute of limitations is an affirmative defense but can be raised by the Court if the defense is obvious from the complaint. *See Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("[W]hen the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit.").

Here, the only allegation against Defendant Ritz is that he was deliberately indifferent to Plaintiff's medical needs when he denied a request to send Plaintiff to an outside doctor at some point during Plaintiff's stay at Menard between August 10, 2013, and April 4, 2018. Plaintiff's

deliberate indifference claim against Defendant Ritz accrued when he was seen by a cardiologist at an outside hospital or, at the latest, when he was transferred from Menard to Pontiac. Plaintiff was transferred to Pontiac on April 4, 2018. He did not file his Complaint until July 15, 2022. (Doc. 1).

Plaintiff received heart surgery on July 10, 2020. Thus, any claim for deliberate indifference against Defendant Ritz based on delayed treatment should have been filed by July 10, 2022. Therefore, even if the continuing violation applied, Plaintiff's claim against Defendant Ritz would still be untimely.

Plaintiff's claims against Defendant Ritz are time-barred by the two-year statute of limitations. Defendant Ritz is DISMISSED with prejudice for failure to state a claim on which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A.

**Defendant Tilden**

After Plaintiff was transferred to Pontiac, he was sent to UIC and examined by a cardiologist. Due to his heart condition, Plaintiff claims that doctors at UIC recommended that he be placed in a cell with open air bars on a low gallery and receive a pillow, showers, and pain medication. Plaintiff alleges that Defendant Tilden, the medical director at Pontiac, was aware of the specialists' recommendations but failed to ensure that his medical permits were in compliance.

Despite his medical permit to be placed on a low gallery, Plaintiff alleges that prison officials placed him on a high gallery. Plaintiff alleges that he informed Defendant Tilden that prison officials were not complying with his medical permit and that going up and down the stairs affected his breathing.

He also alleges that he informed Defendant Tilden that Defendant Hansen was allegedly crushing his pain medication, which rendered it ineffective. Defendant Tilden allegedly told

Plaintiff that he would ensure prison officials complied with his medical permits, but Plaintiff claims no corrective actions were taken.

Finally, Plaintiff alleges that on October 31, 2022, medical doctors recommended that he should continue taking Ultram for pain, have medical showers, and receive snack bags due to weight loss. Plaintiff claims that Defendant Tilden failed to comply with their recommendations.

A medical director sued under Section 1983 cannot be held liable absent personal involvement. *Smith v. Rohana*, 433 Fed. App'x 466, 469 (7th Cir. 2011); *Minix v. Canarecci*, 597 F.3d 824, 834 (7th Cir. 2010) (supervisor must know about and personally be involved in unconstitutional treatment to be held liable for inadequate care; mere supervisory status does not make a defendant responsible). Here, Plaintiff has pled sufficient factual allegations regarding Defendant Tilden's personal involvement to proceed past the pleading stage on his claim that Defendant Tilden was deliberately indifferent to his serious medical needs.

**Defendant Rambo**

Plaintiff alleges that he informed Defendant Rambo, the healthcare administrator at Pontiac, about his serious medical condition and the issues related to his medical permits and pain medication. Defendant Rambo allegedly told Plaintiff there was nothing she could do because it was above her pay grade and she was not getting involved.

He also claims that Defendant Rambo was aware that the doctors at UIC recommended that he be placed in a cell with open air bars on a low gallery and receive a pillow, showers, and pain medication, but Defendant Rambo failed to ensure that prison officials complied with their recommendations.

A healthcare administrator who is not aware of a specific patient's need for care is not generally liable under Section 1983. *See e.g., Miller v. Larson*, 756 Fed. App'x 606, 610 (7th Cir.

2018) (finding that claim against defendant who oversaw the medical staff was properly dismissed because she was not responsible for individualized patient care and did not know about the danger plaintiff faced from medical staff). The Court finds that Plaintiff has made sufficient factual allegations to proceed past the pleading stage on his claim that Defendant Rambo was deliberately indifferent to his serious medical needs.

**Defendant Hansen**

A few months after he was transferred to Pontiac in April 2018, Plaintiff alleges that he was examined by a cardiologist. During this examination, doctors at UIC allegedly recommended that he be placed in a cell with open air bars on a low gallery and receive a pillow, showers, and pain medication. Plaintiff alleges that Defendant Hansen, a nurse practitioner at Pontiac, knew about their recommendations, but she failed to ensure that his medical permits were in compliance.

When he returned to Pontiac after his visit with the cardiologist, Plaintiff was taken to the healthcare unit and examined by Defendant Hansen. She allegedly told Plaintiff that she was going to crush his pain medication, even though Plaintiff informed her that crushing the medication did not relieve his pain. She allegedly responded to his complaints by stating: "I am tired of you whining pussy's [sic] believing that we're suppose [sic] to cater to you inmates."

Despite having a medical permit to be housed on a low gallery, Plaintiff claims that he was placed on a high gallery and that climbing the stairs exacerbated his breathing difficulties. When Plaintiff informed Defendant Hansen that prison officials were not complying with his medical permits, she allegedly told Plaintiff that she is not "Santa Claus" and "I hope you die snitch!"

When Plaintiff informed Defendant Hansen that he was coughing up blood, she allegedly told him to stop whining and that he would be fine.

Finally, Plaintiff alleges that on October 31, 2022, medical doctors recommended that he should continue taking Ultram for pain, have medical showers, and receive snack bags due to weight loss. Plaintiff claims that Defendant Hansen failed to comply with their recommendations.

Based on the allegations above, the Court finds that Plaintiff has sufficiently stated a deliberate indifference claim against Defendant Hansen.

**Defendant Wexford**

Private corporations such as Wexford have potential liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-92 (1978), if they perform a governmental function and, in doing so, injure the plaintiff through an unconstitutional policy or practice. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying municipal liability to private corporations performing governmental functions). "Liability may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policy making authority." *Taylor v. Wexford Health Sources, Inc.*, No.15-5190, 2016 WL 3227310, at *4 (N.D. Ill. June 13, 2016) (citing *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000)). "Although *Monell* claims may proceed with conclusory allegations of a policy or practice, some facts must be pleaded to put the defendant on notice of the alleged wrongdoing." *Taylor*, 2016 WL 3227310, at *4.

Here, Plaintiff does not identify an express policy or the particulars of an express policy. Plaintiff attempts to proceed under the second prong by claiming that Wexford had some widespread and unwritten custom or practice that caused the constitutional violation of which he complains. "To establish 'custom' for § 1983 purposes, the plaintiff must show 'a widespread

practice that, although not authorized by written or express policy, is so permanent and well settled as to constitute a custom.'" *Dolis v. Loftus*, No. 08- 2085, 2011 WL 978916, at *13 (C.D. Ill. Mar. 17, 2011) (quoting *Montano v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008)). To successfully plead liability based on custom, a plaintiff must allege that the corporate policymakers were "aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

In his Second Amended Complaint, Plaintiff alleges Wexford's cost-saving measures constitute an "unconstitutional policy, practice, and custom followed by its employees as set forth in [his] medical history as well as thousands of lawsuits filed against Wexford by other [IDOC] inmates for similar complaints." *Id.* at 8. Plaintiff's allegations regarding his own treatment are insufficient to establish the existence of a widespread unconstitutional policy, practice, or custom. *See Gaston v. Ghosh*, No. 11-6612, 2017 WL 5891042, at *14 (N.D. Ill. Nov. 28, 2017) (plaintiff's allegations as to his own treatment were insufficient to establish a policy) (citing *Shields*, 746 F.3d at 796) (isolated incidents did not add up to a pattern of behavior that would support an inference of a custom or policy). Plaintiff claims that thousands of inmates have sued Wexford and cites to various other lawsuits involving Wexford, but he fails to include any information about the facts of those cases. Merely citing to prior cases is insufficient to allow the Court to infer that a widespread custom or practice existed or that it was the moving force behind Plaintiff's alleged injury. *See Walker v. City of Chicago*, No. 1:21-CV-02648, 2022 WL 971891, at *6 (N.D. Ill. Mar. 31, 2022) (citing *Page v. City of Chicago*, No. 19-CV-07431, 2021 WL 365610, at *2 (N.D. Ill. Feb. 3, 2021) (citing cases)).

Finally, Wexford cannot be held liable under a theory of *respondeat superior* for its employees' actions. *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 754 (7th Cir. 2021) (citing *Monell*, 436 U.S. at 691).

Previously, the Court gave Plaintiff a final opportunity to state a claim against Wexford. (*See* Merit Review Order, Doc. 33 at 11). Plaintiff has attempted to allege a claim against Wexford in this matter three times and has been unable to do so. As a result, Wexford is DISMISSED with prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A.

### Plaintiff's Motion to Substitute Defendant (Doc. 59)

On March 2, 2023, Defendant Andrew Tilden, through his counsel, filed a Suggestion of Death Upon the Record pursuant to Federal Rule of Civil Procedure 25 to confirm that Defendant Tilden passed away on February 19, 2023. (Doc. 58). Rule 25 provides:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

FED. R. CIV. P. 25(a)(1). The 90-day period to file a motion for substitution does not begin until the notice of death is filed and served upon the decedent's successor or representative. *Id.* at (a)(1), (a)(3); *Atkins v. City of Chicago*, 547 F.3d 869, 873 (7th Cir. 2008) ("[T]he cases are unequivocal that an obviously interested nonparty…must be served for the 90-day clock to start running."). Generally, "nonparties with a significant financial interest in the case, namely the decedent's successors (if his estate has been distributed) or personal representative ([if] it has not been), should certainly be served." *Id*. Constitutional torts brought under Section 1983 survive death under Illinois law. *See Hicks v. Young*, No. 10 C 3874, 2012 WL 1755735, at *1 (N.D. Ill. May 15, 2012).

Counsel for Defendant Tilden filed a Suggestion of Death noting his death, but they have not served Defendant Tilden's successor or personal representative. Service is not required under an exception that excuses the party filing the suggestion of death from Fed. R. Civ. P. 25's service requirement when the party cannot identify who should be served. *Atkins*, 547 F.3d at 873; *McSwain v. Suliene*, 2010 WL 148185, at *1 (W.D. Wis. Jan. 11, 2010) (service requirement in Fed. R. Civ. P. 25 "is waived when the party filing the suggestion of death does not know who the representative is.").

On March 6, 2023, Plaintiff filed a Motion to Substitute Defendant, asking the Court to substitute Wexford for Defendant Tilden. (Doc. 59). On March 20, 2023, defense counsel filed a Response, stating that counsel does not possess any information as to whether an estate has been opened for Defendant Tilden in Illinois. (Doc. 63). To date, no successor for Defendant Tilden has been named.

As stated above, Wexford is not liable under a theory of *respondeat superior* for the actions of its employees. *Peterson*, 986 F.3d at 754 (citing *Monell*, 436 U.S. at 691). Plaintiff has not adequately alleged a *Monell* claim against Wexford, and Wexford has been dismissed with prejudice. Wexford is not a proper defendant to this suit. Therefore, Plaintiff's Motion to Substitute Defendant is DENIED.

Defense counsel must attempt to identify the Executor of Dr. Tilden's Estate. Once the identity of the Executor becomes known, defense counsel shall supplement the Suggestion of Death with that information and serve the Suggestion of Death upon all parties, as well as the Executor. Defense counsel is DIRECTED to file a Status Report by May 5, 2023.

**IT IS THEREFORE ORDERED:**

1. This case shall proceed on the Eighth Amendment deliberate indifference claim as stated above against Defendants Henry Tilden, Nikki Rambo, and Cheryl Hansen. All other claims are dismissed and will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of Court pursuant to Federal Rule of Civil Procedure 15.

2. Defendants Stephen Ritz and Wexford Health Sources, Inc. are DISMISSED with prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. The Clerk is DIRECTED to terminate Defendants as parties.

3. Plaintiff's Motion for Status of Amended Complaint [51] is MOOT.

4. Defendant Stephen Ritz's Motion to Dismiss [55] is MOOT. Plaintiff's Motion for Leave to File Sur-Reply [64] regarding Defendant Ritz's Motion is Dismiss is DENIED.

5. Plaintiff's Motion to Substitute Defendant [59] is DENIED. Defense counsel for Defendant Henry Tilden is DIRECTED to attempt to identify the Executor of Dr. Tilden's Estate. Once the identity of the Executor becomes known, defense counsel shall supplement the Suggestion of Death with that information and serve the Suggestion of Death upon all parties, as well as the Executor. Defense counsel is DIRECTED to file a Status Report by May 5, 2023.

6. As Defendants Tilden, Hansen, and Rambo have already executed waivers and filed their answers, no waivers need to be issued.

7. The Court will enter a separate Scheduling Order regarding deadlines for this matter.

8. Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the deposition.

9. Plaintiff shall be provided a copy of all pertinent medical records upon request.

10. Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

ENTERED:   4/5/2023

                                            s/ Michael M. Mihm
                                            Michael M. Mihm
                                            U.S. District Court Judge